UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                            :

MICHAEL KUPERSTEIN, an infant    :
by his parents and natural guardians,  :
ELAINE KUPERSTEIN and STEVEN  :
KUPERSTEIN, and ELAINE          :
KUPERSTEIN and STEVEN           :
KUPERSTEIN, individually,        :

                **Plaintiffs,**  :

    - against -              :

HOFFMAN-LAROCHE, INC., ROCHE :
LABORATORIES, INC., DONALD    :
LAWRENCE, M.D., and DOCTORS   :
4 KIDS,                      :

                **Defendants.**  :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/11/06

**OPINION AND ORDER**

**06 Civ. 4942 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION AND BACKGROUND

        Eileen, Steven, and Michael Kuperstein ("the Kupersteins"), all New

York residents, brought this action on February 24, 2006 in the Supreme Court of

the State of New York, County of New York, alleging injuries to the infant

Michael caused by a prescription drug, Lariam.[1]  The Kupersteins bring a number

of state law claims against Hoffman-La Roche, Inc. and Roche Laboratories, Inc.

(collectively "Roche"), the companies that market Lariam,[2] including claims of

negligence, breach of express and implied warranty, defective design, failure to

warn, and fraud.[3]  The Kupersteins also brought state law claims against Dr.

Donald Lawrence and Doctors 4 Kids (collectively "Doctor Defendants") arising

out of their prescription of Lariam to Michael, including medical malpractice,

negligence, informed consent, and derivative injuries to Elaine and Steven as

Michael's parents.[4]  The initial pleading claimed damages in an unspecified

amount for, *inter alia*, pain and suffering, permanent cognitive deficits, and

medical expenses.[5]

>        After limited discovery in state court, on or about June 1, 2006, the

Kupersteins sent Roche a Statement of Damages claiming $25 million in

---

[1]        *See* Verified Complaint ("Compl."), Ex. A to Affirmation of Diane E. Lifton, defendants' counsel ("Lifton Aff.").

[2]        *See id.* ¶ 8; *see also* Defendants Hoffman-La Roche, Inc.'s and Roche Laboratories, Inc.'s Answer and Affirmative Defenses to Plaintiffs' Verified Complaint, Ex. C to Lifton Aff. ¶ 8.

[3]        *See* Compl. ¶¶ 28-84.

[4]        *See id.* ¶¶ 97-126.

[5]        *See id.* ¶ 120.

-2-

damages.[6]  On June 27, 2006, Roche filed a notice of removal with this Court,

asserting federal jurisdiction under section 1332(a) of title 28 of the United States

Code.[7]  On July 24, 2006, the Kupersteins moved for remand, pursuant to section

1447(c) of title 28 of the United States Code, on the ground that complete

diversity among the parties was lacking.[8]  The Kupersteins also seek an award of

the costs and attorneys' fees they expended in connection with this removal.[9]

        The parties do not dispute that both the Kupersteins and the Doctor

Defendants are New York residents,[10] and that the Roche defendants are foreign

corporations.[11]  The parties also agree that, under section 1332(a), this Court may

exercise jurisdiction only if there is complete diversity among the parties.[12]  Roche

---

[6]    *See* Memorandum of Law of Defendants Hoffman-La Roche, Inc. and
Roche Laboratories, Inc. in Opposition to Plaintiffs' Motion to Remand ("Def.
Mem.") at 4.

[7]    *See id.*

[8]    *See* Notice of Motion for Remand ("Remand Motion").

[9]    *See id.* at 2.

[10]   *See* Def. Mem. at 5.

[11]   *See* Compl. ¶ 2.

[12]   *See* Def. Mem. at 5 n.2.  *See also Whitaker v. American Telecasting
Inc.*, 261 F.3d 196, 206 (2d Cir. 2001) ("identity of citizenship between a plaintiff
and a defendant is sufficient to defeat federal diversity jurisdiction").

nevertheless opposes the Kupersteins' remand motion, asserting

that the Doctor Defendants were fraudulently joined to this action in order to

defeat diversity.[13]

## II.    LEGAL STANDARDS

### A.    Fraudulent Joinder

Fraudulent joinder is a "legal term of art [used] to refer to the joinder

of unnecessary or nominal parties in order to defeat federal jurisdiction."[14]  The

term may apply where "there has been outright fraud committed in the plaintiff's

pleadings," or where actual fraud is absent, but where the non-diverse defendant

has "no real connection with the controversy."[15]  "Where joinder of a defendant is

fraudulent, the court may dismiss the defendant from the action," and assert

jurisdiction over the remaining parties.[16]

"The defendant seeking removal bears a heavy burden of proving

fraudulent joiner, and all factual and legal issues must be resolved in favor of the

---

[13]      *See* Def. Mem. at 1.

[14]      *Nosonowitz v. Allegheny Beverage Corp.*, 463 F. Supp. 162, 163
(S.D.N.Y. 1978).

[15]      *Pampillonia v. R.J.R. Nabisco Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

[16]      *Whitaker v. Fresno Telsat Inc., et al.*, No. 99 Civ. 6059, 1999 WL
767432, at *3 (S.D.N.Y. Sept. 28, 1999), *aff'd sub nom., Whitaker v. American
Telecasting Inc.*, 261 F.3d 196 (2d Cir. 2001).

-4-

plaintiff."[17]  To meet this burden, "the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is *no possibility*, based on the pleadings that [the] plaintiff can state a cause of action against the non-diverse defendant in state court."[18]  "A court must thus consider the complaint at the time of removal to determine if removal was appropriate."[19]  If even one of the plaintiff's claims against a non-diverse defendant can survive, the action must be remanded.[20] Finally, apart from fraud, the plaintiff's motive in joining the non-diverse party is irrelevant, so long as the claim against that party is colorable.[21]

### B. The *Pampillonia* Standard

*Pampillonia* v. *R.J.R. Nabisco, Inc.* requires a court assessing a defendant's allegation of fraudulent joinder to determine whether the "plaintiff can

---

[17]    *Pampillonia,* 138 F.3d at 461.

[18]    *Id.* (emphasis added).

[19]    *Federal Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 368 (S.D.N.Y. 2006) (citing *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 399 F. Supp. 2d 356, 363 (S.D.N.Y. 2005)).

[20]    *See Intershoe, Inc. v. Filanto S.p.A.*, 97 F. Supp. 2d 471, 475 (S.D.N.Y. 2000).

[21]    *See Moran v. Continental Cas.*, No. 01 Civ. 1008, 2001 WL 1717214, at *3 (W.D.N.Y. Nov. 16, 2001).

-5-

state a cause of action against the non-diverse defendant in state court."[22]  In other words, "[j]oinder will be considered fraudulent when it is established that there can be no recovery [against the defendant] under the law of the state on the cause alleged."[23]  To defeat a remand motion a defendant must show "by clear and convincing evidence" ("the highest standard of proof that the law imposes in civil cases")[24] that a court of the forum state would not recognize the plaintiff's claim as stating a cause of action.[25]

While courts applying the *Pampillonia* standard scrutinize the plaintiff's claims with greater leniency than when ruling on a motion to dismiss, the motion to dismiss standard remains a useful point of reference.[26]  If it can be

---

[22]    *Pampillonia,* 138 F.3d at 461.

[23]    *Id.* (quotations omitted).

[24]    *Cleary v. Boston Scientific Corp.*, No. 06 Civ. 3423, 2006 WL 2689815, at *2 (E.D.N.Y Sept. 18, 2002).

[25]    *Pampillonia,* 138 F.3d at 461.

[26]    *See Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 182 (S.D.N.Y. 2003); *Moran,* 2001 WL 1717214, at *2 (determining that courts "subject[] the complaint to less searching scrutiny than on a motion to dismiss for failure to state a claim."); *Ecology Env't, Inc. v. Automated Compliance Sys.*, No. 00 Civ. 0887, 2001 WL 1117160, at *2 (W.D.N.Y. Sept. 4, 2001); *Intershoe, Inc.*, 97 F. Supp. 2d at 474. *But see Cleary,* 2006 WL 2689815, at *3 ("Some of those circuits have referred to a 'summary judgment-like' standard . . . which I believe is appropriate as the outer boundary of the 'no possibility' test (Rule 12(b)(6) being the inner boundary).") (citing *Sid Richardson Carbon &*

determined that the complaint would likely survive a motion to dismiss in state

court, the inquiry ends and remand is appropriate. If state case law or legislation

removes all reasonable possibility that the plaintiff would be permitted to litigate

the claim, then remand must be denied.[27] If the answer is doubtful, that doubt

must be resolved in favor of the plaintiff and the case must be remanded.

Although there is no question that the substantive law of the forum

state controls in determining whether a plaintiff's complaint states a cause of

action in the context of motions to remand, courts in this Circuit have referenced

both state and federal pleading standards when testing the sufficiency of a

plaintiff's pleading.[28] Because the purpose of fraudulent joinder analysis is to

---

*Gasoline Co. v. Interenergy Res.*, 99 F.3d 746 (5th Cir. 1996)).

[27]    *See In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d 272 (S.D.N.Y. 2001) ("*Rezulin I*"). In *Rezulin I* the court analyzed the substantive law of five forum states (Mississippi, Alabama, Texas, West Virginia, and Louisiana) and found that the plaintiffs' claims against the various non-diverse defendants (pharmaceutical sales representatives, pharmacists, and doctors) could not proceed in state court. Roche argues that this Court must follow the holdings in *Rezulin I* and *In re Rezulin Prods. Liab. Litig.,* No. 00 Civ. 2843, 2002 WL 31852826 (S.D.N.Y. Dec. 18, 2002) ("*Rezulin II*"), and deny the plaintiffs' motion for remand. *See* Def. Mem. at 5. Because the claims, facts, and governing state law before me are different, the *Rezulin* cases are not controlling.

[28]    *See Rezulin II,* 2002 WL 31852826, at \*9-10 (finding that Mississippi had substantially adopted federal standards for particularity of pleading)*; Rezulin I*, 133 F. Supp. 2d at 284 (applying Fed. R. Civ. P. 9(b) to test the sufficiency of the pleading of fraud)*; Moran*, 2001 WL 1717214, at \*3 (referencing section

-7-

determine whether a *state* court might permit a plaintiff to proceed with his claims,

I will refer to the state pleading standards as they have been applied by state courts

to similar claims.[29]  If state authority suggests that there is a reasonable possibility

that New York would permit the Kupersteins' causes of action against the Doctor

Defendants to proceed, then this case must be remanded.

## C.   Costs

Section 1447(c) states that an "order remanding the case may require

the payment of just costs and actual expenses, including attorney fees, incurred as

a result of the removal."[30]  Assessment of costs and fees against the removing

defendants is within the court's discretion and does not require a finding of bad

faith or frivolity.[31]  Some courts have chosen to exercise their discretionary power

---

3016(a) of the New York Civil Practice Law and Rules ("C.P.L.R.") in analyzing
whether the complaint was  pleaded with sufficient particularity); *Intershoe, Inc.,*
97 F. Supp. 2d at 476 ("it suffices that the Complaint colorably asserts such a
claim and that New York's liberal pleading rules leave open the possibility that the
state court would deem the Complaint to state a claim"); *Sonnenblick-Goldman
Co. v. ITT Corp., et al.*, 912 F. Supp. 85, 90 (S.D.N.Y. 1996) (applying Fed. R.
Civ. P. 9(b)).

[29]   *See, e.g., Intershoe, Inc.*, 97 F. Supp. 2d at 475 (seeking guidance
from state precedent (citing *Curiano v. Suozzi*, 63 N.Y.2d 113 (1984) affirming
dismissal of plaintiffs' cause of action for abuse of process)).

[30]   28 U.S.C. § 1447(c).

[31]   *See Morgan Guar. Trust Co. v. Republic of Palau*, 971 F.2d 917,
923-24 (2d Cir. 1992); *Wilds v. UPS, Inc.*, 262 F. Supp. 2d 163 (S.D.N.Y. 2003).

to award costs where "defendants have failed to establish a reasonable basis for removal."[32] However, the mere fact that the defendant fails to carry his burden does not of itself require an award of costs to the plaintiff.[33]

## D.    New York Law of Informed Consent

The cause of action of informed consent is defined by section 2805(d) of the New York Public Health Law, which reads, in relevant part:

> 1. Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical, dental or podiatric practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation.
>
> . . . .
>
> 3. For a cause of action therefor it must also be established that a reasonably prudent person in the patient's position would not have undergone the treatment or diagnosis if he had been fully informed and that the lack of informed consent is a proximate cause of the injury or condition for which recovery is sought.[34]

As a threshold matter, a cause of action will lie where the treatment provided by the defendant was the prescription of medication.[35] Section 2805(d)(1)

---

[32]    *Ecology Env't, Inc.*, 2001 WL 1117160, at *4.

[33]    *See, e.g., Moran*, 2001 WL 1717214, at *4 (denying costs); *Intershoe, Inc.,* 97 F. Supp. 2d at 476 (same).

[34]    N.Y. Pub. Health L. § 2805(d).

[35]    *See George v. N.Y. City Health & Hosps. Corp.,* 14 A.D.3d 427 (1st

defines the standard of care element of the cause of action.[36]  Section 2805(d)(3)
states two distinct causation elements of the claim: 1) that a reasonably prudent
patient would not have consented if fully informed, and 2) that the injury was
proximately caused by the failure to inform.[37]

Several appellate decisions hold that to survive a motion to dismiss, each
element of section 2805(d) must be specifically pleaded.[38]  Nonetheless, New York
courts emphasize that even an "inartfully drawn" complaint alleging lack of informed
consent should not be dismissed if "a cause of action can be made out from it,"[39] and
complaints that fail to plead all three elements regularly survive motions to dismiss.[40]

---

Dep't 2005); *Muchler v. Penwarden*, 207 A.D.2d 977 (4th Dep't 1994).

[36]     *See Koller v. Manhattan Eye, Ear & Throat Hosp.,* 168 A.D.2d 671
(2d Dep't 1990).

[37]     *See Anderson v. Seymour Weiner*, 100 A.D.2d 919 (2d Dep't 1984).

[38]     *See, e.g., Dodes v. North Shore Univ. Hosp.*, 149 A.D.2d 455 (2d
Dep't 1989) (dismissing complaint for failure to allege the two elements of section
2805(d)(3)); *Anderson,* 100 A.D.2d at 919 (same).

[39]     *Rubino v. Albany Med. Ctr. Hosp. et al.,* 117 A.D.2d 909 (3d Dep't
1986).

[40]     *See, e.g., Iazetta v. Vicenzi*, 200 A.D.2d 209 (3d Dep't 1994) (denial
of motion to dismiss affirmed where plaintiff failed to allege proximate cause
element);  *Muchler*, 207 A.D.2d at 977 (same, where complaint alleged only first
element)*; Torres v. Southside Hosp.,* 84 A.D.2d 836, 836 (2d Dep't 1981) (same,
where complaint alleged only that plaintiffs "were treated without first obtaining
an informed consent").

## III.   DISCUSSION

### A.   The Kupersteins' Cause of Action for Lack of Informed Consent

The Kupersteins' Complaint alleges all three elements of informed

consent.   As to the element of the physician's breach of the standard of care

(corresponding to section 2805(d)(1)), the Complaint alleges:

1. The Doctor Defendants treated Michael Kuperstein.[41]
2. The Doctor Defendants prescribed Lariam.[42]
3. They "failed to . . . inform plaintiffs of the risks . . . necessity and/or lack of necessity inherent in taking Lariam."[43]
4. They "failed to secure from plaintiffs their informed consent."[44]
5. They "failed to disclose such alternatives to treatment and reasonably foreseeable risks and benefits involved, as reasonable medical practitioners acting under similar circumstances would have disclosed...."[45]

The Complaint adequately alleges the first causation element of section

2805(d)(3): "[R]easonably prudent persons in the plaintiff's position would not have

consented to take Lariam if they had been properly . . . informed of the risks."[46]   The

---

[41]   *See* Compl. ¶¶ 101-102.

[42]   *See id.* ¶ 109.

[43]   *Id.* ¶ 116.

[44]   *Id.*

[45]   *Id.* ¶ 115.

[46]   *Id.* ¶ 118.

Complaint also adequately alleges the second element of section 2805(d)(3): "[L]ack of consent is the proximate cause [of Michael's injuries]."[47]

Because New York courts would find the Kupersteins' claim of lack of informed consent sufficient to survive a motion to dismiss, this claim survives the less stringent standard applied in fraudulent joinder analysis. Given that this claim states a cause of action, there is no need to examine the other two claims against the Doctor Defendants. If even one claim against a non-diverse defendant can be brought in state court, the action must be remanded.[48]

## B.    Costs

In order to carry its burden to show fraudulent joinder, Roche was required to demonstrate that the Kupersteins' Complaint failed to state any cause of action against the Doctor Defendants under New York law. However, Roche made no attempt to meet its burden. There is not a single citation to a New York case or statute in Roche's Memorandum of Law. Roche also mischaracterizes the substance of the Kupersteins' Complaint, stating: "the *only* two facts asserted in support of Plaintiffs' claims against Dr. Lawrence and his practice are that (i) Plaintiff Michael

---

[47]    *Id.* ¶ 119. The Complaint also specifies the injuries suffered. *See id.* ¶ 120.

[48]    *See Intershoe, Inc.,* 97 F. Supp. 2d at 475.

-12-

Kuperstein was treated by Dr. Lawrence and his practice in August 2004 and (ii) Plaintiff Michael Kuperstein was prescribed Lariam® by Dr. Lawrence and his practice."[49]

Roche's failure to address the governing law or accurately represent the factual allegations of the Complaint reflects a willingness on its part to waste the time of this Court and of opposing counsel. As a result, plaintiffs' request to recover the costs, disbursements, and reasonable attorneys' fees incurred in moving to remand is granted. The Kupersteins are directed to submit an affidavit itemizing such costs within ten days of the entry of this order. Roche may file any objections within ten days thereafter, and the matter will then be ripe for decision.

## IV.   CONCLUSION

Plaintiffs' motions to remand and to recover from defendants their costs and reasonable attorneys' fees are granted. The parties shall make submissions with respect to costs as directed. This Court shall retain jurisdiction over the parties solely for the purpose of setting the amount of costs and attorneys' fees. This case shall be remanded forthwith to New York State Supreme Court, New York County. The Clerk of the Court is directed to close this motion [docket no. 5] and this case.

---

[49]     Def. Mem. at 10. *But see* Compl. ¶¶ 115-120.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October //, 2006

## -Appearances-

### For Plaintiffs:

Elise Hagouel Langsam, Esq.
Langsam Law
67 Wall Street, Suite 1710
New York, N.Y. 10005
Tel: (212) 742-2700
Fax: (212) 742-2707

### For Defendants:

Diane E. Lifton, Esq.
Michelle M. Bufano, Esq.
Shira B. Roseman, Esq.
Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C.
One Pennsylvania Plaza, 37th Floor
New York, N.Y. 10119-3701
Tel: (212) 649-4700
Fax: (212) 333-5980